FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   JAN 3 1 2019   ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
JAIME ROLANDO ESPINOZA CALLE,

                              Plaintiff,

              -against-

ACTING ATTORNEY GENERAL MATTHEW G.
WHITAKER[1], SECRETARY KIRSTJEN M. NIELSEN,
ACTING DEPUTY SECRETARY CLAIRE M.
GRADY[2], DISTRICT DIRECTOR THOMAS CIOPPA,
ACTING DISTRICT DIRECTOR JOHN THOMPSON,
and BARBARA Q. VELARDE[3], CHIEF OF THE
ADMINISTRATIVE APPEALS OFFICE,

                              Defendants.
--------------------------------------------------------------------X

**ORDER**
18-CV-1957(SJF)

FEUERSTEIN, District Judge:

I.      Introduction

        On March 30, 2018, plaintiff Jaime Rolando Espinoza Calle ("plaintiff") commenced this

action pursuant to, *inter alia*, the Administrative Procedure Act ("APA"), 5 U.S.C. § 706,

seeking judicial review of decisions of USCIS denying his applications for Special Immigrant

Juvenile ("SIJ") classification ("I-360 Petitions") and to compel defendants, all of whom are

sued only in their official capacity, (*see* Complaint ["Compl."], ¶¶ 2-7, 14), to grant his I-360

--------------------------------------------------

[1] Acting United States Attorney General Matthew G. Whitaker is automatically substituted as a party in place of
former United States Attorney General Jefferson Sessions, III pursuant to Fed. R. Civ. P. 25(d). The Clerk of the
Court shall amend the docket accordingly.

[2] Claire M. Grady, Acting Deputy Secretary of the United States Department of Homeland Security ("DHS"), is
automatically substituted as a party in place of former Deputy Secretary Elaine Duke pursuant to Fed. R. Civ. P.
25(d). The Clerk of the Court shall amend the docket accordingly.

[3] Barbara Q. Velarde, the current chief of the Administrative Appeals Office ("AAO") of the United States
Citizenship and Immigration Services ("USCIS"), is automatically substituted as a party in place of her predecessor,
Ron Rosenberg, pursuant to Fed. R. Civ. P. 25(d). The Clerk of the Court shall amend the docket accordingly.

Petitions. Pending before the Court is defendants' motion to dismiss plaintiff's claims in their entirety pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction and failure to state a claim for relief; or, in the alternative, for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, defendants' motion is granted to the extent set forth herein.

II.     Background

A.     Factual Background

Plaintiff was born in Ecuador on September 11, 1994 and is currently twenty-four (24) years old. (Compl., ¶ 15). Plaintiff arrived in the United States in or around 2011, when he was sixteen (16) years old. (Administrative Record ["AR"] at 2, 104, 112).

At some unidentified time, plaintiff submitted a verified guardianship petition, dated July 31, 2015, *i.e.*, six (6) weeks prior to his twenty-first (21st) birthday, to the Family Court of the State of New York, County of Queens (the "Family Court" or the "juvenile court")[4]. (Compl., ¶ 16). On August 18, 2015, *i.e.*, approximately three and a half (3 ½) weeks prior to his twenty-first (21st) birthday, plaintiff filed a motion in the Family Court for an order of "Special Findings" pursuant to article 6 of the New York Family Court Act. (AR at 106). The Family Court initially scheduled a hearing on the petition and motion for September 1, 2015, but, for reasons unknown, subsequently rescheduled it for September 10, 2015, *i.e.*, the day before plaintiff's twenty-first (21st) birthday. (Compl., ¶ 16; AR 106).

---

[4] The Family Court Order Appointing Guardian of the Person indicates, in relevant part, that the petition was duly verified on August 5, 2015. (AR at 18). The summons in the guardianship proceeding is also dated August 5, 2015. (AR at 137).

On September 2, 2015, *i.e.*, nine (9) days prior to his twenty-first (21st) birthday, plaintiff sent an I-360 Petition seeking SIJ classification (the "First I-360 Petition") to USCIS via express mail, which was received by the USCIS on September 3, 2015.[5] (Compl., ¶ 17; AR 1-14). The First I-360 Petition, *inter alia*, indicated that plaintiff's "case was still pending before the family court in Queens," and plaintiff did not submit any orders issued by the Family Court therewith. (Compl., ¶ 17; AR 1-14).

On September 10, 2015, *i.e.*, one (1) week after plaintiff filed his First I-360 Petition and one (1) day before plaintiff's twenty-first (21st) birthday, a referee of the Family Court stated on the record that she was granting the guardianship petition, (Compl., ¶ 18; AR 116), and signed a "Special Immigrant Juvenile Status Order" ("SIJ Order") finding, *inter alia*, (i) that plaintiff was under twenty-one (21) years of age and unmarried; (ii) that plaintiff was "dependent upon the Family Court, or has been committed to or placed in the custody of a state agency or department, or an individual or entity appointed by the state or Family Court[;]" (iii) that "[r]eunification with one or both of his/her parents [was] not viable due to . . . abandonment[] and/or [] a similar basis under New York law because . . . [his] father has never supported him financially or emotionally[,] he rarely communicates with his father[,] [and] since 2011 [his] mother has not supported him financially[;]" and (iv) that it was not in plaintiff's "best interest to be removed from the United States and returned to . . . Ecuador. . . ." (AR 46; Compl., ¶¶ 18-19). However, for reasons unknown, the Family Court did not issue the Order Appointing Guardian of the

---

[5] Pursuant to 8 C.F.R. § 103.2(a)(7)(i), "USCIS will consider a benefit request received and will record the receipt date as of the actual date of receipt at the location designated for filing such benefit request whether electronically or in paper format."

Person ("Guardianship Order"), granting guardianship of plaintiff until his twenty-first (21st) birthday and authorizing the clerk of the Family Court to issue letters of guardianship, until January 15, 2016, more than four (4) months after plaintiff's twenty-first (21st) birthday. (AR 18-19). Nonetheless, the clerk of the Family Court issued "Letters of Guardianship of the Person of a Minor" ("Letters of Guardianship") on September 10, 2015, one (1) day prior to plaintiff's twenty-first (21st) birthday.[6] (Compl., ¶ 18; AR 20, 47).

The following day, *i.e.*, plaintiff's twenty-first (21st) birthday, plaintiff filed another I-360 Petition seeking SIJ classification with USCIS (the "Second I-360 Petition"), with which he submitted the SIJ Order and the Letters of Guardianship issued by the Family Court.[7] (Compl., ¶ 20; AR at 35-65, 147-164).

On December 21, 2015, USCIS sent plaintiff a "Notice of Intent to Deny" ("NOID"), indicating, *inter alia*, that it intended to deny his First I-360 Petition because: (i) he did not submit a copy of his birth certificate or other evidence of his age, nor copies of the Family Court orders upon which his claim to eligibility for SIJ classification was based; and (ii) in part 6 of the petition, "which asks if you have been declared dependent upon a juvenile court of the United States and if a juvenile court has declared that reunification with one or both of your parents is not viable due to abuse, neglect, abandonment, or a similar basis under state law, [plaintiff] wrote in 'pending.'" (AR at 14-16; Compl., ¶ 21). The NOID further indicates, in relevant part:

---

[6] The Family Court appointed the mother of plaintiff's girlfriend as his guardian "on consent of the parents, [and] in the best interests of the subject child" on the basis of testimony that plaintiff had been "residing with her for at least 4 years, and she [was] providing for him financially, that he is the father of [her] grandchild . . . and [plaintiff was] requesting it and he's 20 years old. . . ." (AR 105, 116-17).

[7] Plaintiff sent the Second I-360 Petition to USCIS via express mail on September 10, 2015, but USCIS did not receive it until the following day, September 11, 2015. *See* 8 C.F.R. § 103.2(a)(7)(i).

4

(i) that before USCIS's decision became final, plaintiff was thereby provided an opportunity to submit documentary evidence to "overcome the deficiencies forming the grounds for the intended denial," (AR at 14); and (ii) that plaintiff had thirty (30) days from the date thereof, *i.e.*, until January 20, 2016, to submit his response "and any additional information and/or evidence to support [his] positions." (*Id.* at 16).

On January 19, 2016, USCIS received a letter from plaintiff's counsel, dated January 15, 2016, in response to the NODI, indicating: "Attached please find the [NOID], and the supporting documents as required. (Guardianship Order, SIJ Order, Birth Certificate)." (AR at 17-20).

By decision dated January 28, 2016 (the "January Decision"), USCIS denied plaintiff's First I-360 Petition on the grounds: (i) that the documentary evidence in the record, which included, *inter alia*, the Family Court orders, *i.e.*, the Guardianship Order, the Letters of Guardianship and the SIJ Order, were "insufficient to show that th[e] petition was not submitted primarily for immigration purposes[;]" and (ii) that in order to be classified as an SIJ, the petition "must have been properly filed with the required supporting documents and approvable at the time of filing," but plaintiff's First I-360 Petition "was not approvable at the time of filing" because all of the Family Court orders "were executed after the date of filing." (AR at 21-23; Compl., ¶ 22).

On February 17, 2016, USCIS denied plaintiff's Second I-360 Petition (the "February Decision") on the basis that he was ineligible to be classified as an SIJ because he was twenty-one (21) years of age at the time of filing that petition. (AR 147, 172-75; Compl., ¶ 23).

On February 22, 2016, plaintiff filed a notice of appeal to the AAO of the January Decision denying his First I-360 Petition. (AR 24-53, 207; *see* Compl., ¶ 24).

5

On March 8, 2016, plaintiff filed a notice of appeal to the AAO of the February Decision denying his Second I-360 Petition, (AR 180-234; Compl., ¶ 25), together with a transcript of the Family Court proceedings held on September 10, 2015. (Compl., ¶ 25).

By decision dated November 3, 2016 (the "First AAO Decision"), (AR 66-71), the AAO dismissed plaintiff's appeal from the January Decision, finding, *inter alia*, that the Director "properly determined that [plaintiff] had not established his eligibility [for SIJ classification] at the time of filing as the requisite juvenile court guardianship/dependency order was not in effect at the filing of the [First I-360 Petition]."[8]  (AR at 68-70; *see* Compl., ¶ 26).

By decision dated December 1, 2016 (the "Second AAO Decision"), (AR 239-245), the AAO dismissed plaintiff's appeal from the February Decision, finding, *inter alia*, (i) that the Director "properly determined that [plaintiff] was ineligible for SIJ classification because [he] was 21 years of age and was no longer a child under the [INA] when he filed the [Second] [I-360] [P]etition on his 21st birthday[,]" (AR at 242); and (ii) that plaintiff "does not benefit under the settlement agreement" in the class action, *Perez-Olano v. Holder*, No. 05-cv-2604 (C.D. Cal. 2005) (the "*Perez-Olano* Settlement Agreement"), or under the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("2008 TVPRA"), Pub. L. No. 110-457, 122 Stat. 5044 (2008), "as he was not under 21 years of age and did not qualify as a child under the

---

[8]  Although the AAO also found that the record, as supplemented on the appeal, did not establish plaintiff's eligibility for SIJ classification because "it does not contain a reasonable factual basis for the juvenile court's best interest determination," as required by Section 101(a)(27)(J)(ii) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101(a)(27)(J)(ii), (AR at 68, 70-71), upon plaintiff's motion to reopen and submission of additional evidence, the AAO found that the record sufficiently "demonstrates the factual basis for the [Family] [C]ourt's best-interest determination" and, thus, that "USCIS' consent to his request for SIJ classification would have been warranted were he otherwise eligible." (AR 145). Accordingly, that issue, which was also raised in the Second AAO Decision, (AR 242, 244) and similarly decided in the order denying plaintiff's second motion to reopen, (AR 320-21), is not addressed herein.

6

[INA] when he filed the [Second I-360] petition, as required." (AR 243; *see* Compl., ¶ 28).

On or about December 5, 2016, plaintiff sent a motion to reopen and to reconsider the First AAO Decision to the USCIS via priority overnight mail ("First Reconsideration Motion"), (AR 72-139; *see* Compl., ¶ 27), "explaining, in part, that under New York law, a Judge's order becomes effective when the Judge states on the record in the transcript that she is granting the requested relief." (Compl., ¶ 27).

On or about December 19, 2016, plaintiff sent a motion to reopen and to reconsider the Second AAO Decision to the USCIS via express mail ("Second Reconsideration Motion"). (AR 245-315; *see* Compl., ¶ 29).

By decision dated July 5, 2017, the AAO denied plaintiff's First Reconsideration Motion, (AR 140-46), finding, *inter alia*, that plaintiff was not eligible for SIJ classification at the time of filing the First I-360 Petition because: (i) his "guardianship order was not issued by the [Family Court] and was not submitted to USCIS until after the [First I-360] [P]etition was filed, [so he] was not the subject of a juvenile court order containing the requisite dependency or custody determination and did not establish his eligibility for SIJ classification at the time of filing as required[,]" (AR 143); (ii) the "transition rule" set forth in Section 235(d)(6) of the 2008 TVPRA is not applicable because plaintiff's First I-360 Petition "was not denied based on age, but rather, was denied because [he] did not file required initial evidence and was not the subject of a juvenile court order containing a juvenile dependency or custody determination at the time of filing[,]" (*id.*); and (iii) the *Perez-Olano* Settlement Agreement was not applicable because plaintiff's First I-360 Petition was not denied on the basis that a valid dependency order had been terminated due to age before he filed it and he "was not the subject of a juvenile court order

7

containing a dependency or custody determination at the time he filed his [First I-360] [P]etition." (AR 144).

By a separate decision, also dated July 5, 2017, the AAO denied plaintiff's Second Reconsideration Motion, (AR 316-22), finding, *inter alia*, (i) that pursuant to 8 C.F.R. § 103.2(a)(7)(i), the date of filing is the date USCIS actually receives a benefit request and since USCIS received plaintiff's Second I-360 Petition on his 21st birthday, plaintiff "was not under 21 years of age and not a child at the time of filing as required[,]" (AR 319); (ii) that DHS and USCIS interpret the term "applied for" as used in the 2008 TVPRA to be the date on which an SIJ petition is filed, and plaintiff "ha[d] not cited to any authority in support of his assertion that the term . . . requires an application of the mailbox rule to establish the filing date rather than the receipt date of the petition as provided by regulation[,]" (*id.*); and (iii) that plaintiff cannot invoke protection under the *Perez-Olano* Settlement Agreement because in order to invoke such protection, the "SIJ petitioner must have been *both* under 21 years *and* the subject of a valid dependency or custody order at the time of filing[,]" and plaintiff did not meet the first prong because he was not under twenty-one (21) years of age when he filed the Second I-360 Petition." (AR 320) (emphasis in original).

### B.    Procedural History

On March 30, 2018, plaintiff commenced this action pursuant to, *inter alia*, the APA, seeking: (i) to compel defendants to grant his I-360 Petitions or, in the alternative, an order "issu[ing] instructions to the Defendants on further processing of the I-360 applications[,]" (Compl., ¶ 9 and "Wherefore" clause at p. 9); and (ii) judgment declaring that defendants "are

utilizing unlawful legal standards in evaluating [his] immigration application." (*Id.*, ¶¶ 10, 13). Specifically, plaintiff seeks judgment declaring that defendants: (i) violated 8 U.S.C. §§ 1101(a)(27)(J) and 1232(d)(6), the terms of the *Perez-Olano* Settlement Agreement, and "the Fifth Amendment's guarantee of due process of law," by failing to grant his I-360 Petitions (first through fourth claims for relief, respectively), (Compl., ¶¶ 50-57); (ii) violated 8 C.F.R. § 204.11 "and other regulations" by failing to grant his I-360 Petitions and "to send a 'Request for Evidence' ['RFE'] which [US]CIS normally sends to all applicants to request missing documents and to allow applicants additional to [sic] submit such documentation" (fifth claim for relief), (Compl., ¶¶ 58-59); and (iii) "violated provisions of the [APA] in making 8 C.F.R. § 204.11 a rule as it contradicts 8 U.S.C. § 1101(a)(27)(J) and is thus an impermissible interpretation of the statute" (sixth claim for relief). (Compl., ¶¶ 60-62).

Defendants now move to dismiss plaintiff's claims in their entirety pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction and failure to state a claim for relief; or, in the alternative, for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

III.    Discussion

A.  Fed. R. Civ. P. 12(b)(1)

1.   Standard of Review

"Federal courts are courts of limited jurisdiction," *Gunn v. Minton*, 568 U.S. 251, 256, 133 S. Ct. 1059, 185 L. Ed. 2d 72 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994)), and may not preside over cases

absent subject matter jurisdiction. *See Lightfoot v. Cendant Mortg. Corp.*, — U.S. —, 137 S. Ct. 553, 560, 196 L. Ed. 2d 493 (2017) ("[A] court's subject-matter jurisdiction defines its power to hear cases."); *Kokkonen*, 511 U.S. at 377, 114 S. Ct. 1673 (holding that federal courts "possess only that power authorized by Constitution and statute . . . .") Lack of subject matter jurisdiction cannot be waived or forfeited, and may be raised at any time by a party or by the court *sua sponte*. *See Gonzalez v. Thaler*, 565 U.S. 134, 141, 132 S. Ct. 641, 181 L. Ed. 2d 619 (2012); *see also Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153, 133 S. Ct. 817, 184 L. Ed. 2d 627 (2013) ("Objections to a tribunal's jurisdiction can be raised at any time, even by a party that once conceded the tribunal's subject-matter jurisdiction over the controversy."); *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434, 131 S. Ct. 1197, 179 L. Ed. 2d 159 (2011) ("[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press. . . . Objections to subject-matter jurisdiction . . . may be raised at any time.") If a court lacks subject matter jurisdiction, it must dismiss the action. *See* Fed. R. Civ. P. 12(h)(3); *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514, 126 S. Ct. 1235, 163 L. Ed. 2d 1097 (2006).

"Dismissal of a case for lack of subject matter jurisdiction under Rule 12(b)(1) is proper when the district court lacks the statutory or constitutional power to adjudicate it." *Doyle v. Midland Credit Mgmt., Inc.*, 722 F.3d 78, 80 (2d Cir. 2013) (quoting *Ford v. D.C. 37 Union Local 1549*, 579 F.3d 187, 188 (2d Cir. 2009)); *accord Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L.*, 790 F.3d 411, 416-17 (2d Cir. 2015). "Article III of the Constitution grants the Judicial Branch authority to adjudicate 'Cases' and 'Controversies.' In our system of

government, courts have no business deciding legal disputes or expounding on law in the absence of such a case or controversy." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90, 133 S. Ct. 721, 184 L. Ed. 2d 553 (2013) (quotations and citation omitted). "A case becomes moot-- and therefore no longer a 'Case' or 'Controversy' for purposes of Article III-- when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome[,]" *id.*, at 91, 133 S. Ct. 721 (quotations and citation omitted), unless the controversy is "capable of repetition, yet evading review." *Kingdomware Techs., Inc. v. United States*, --- U.S. ---, 136 S. Ct. 1969, 195 L. Ed. 2d 334 (2016) (quotations and citation omitted). "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights." *Already*, 568 U.S. at 91, 133 S. Ct. 721 (quotations and citation omitted). "A case that becomes moot at any point during the proceedings is no longer a 'Case' or 'Controversy' for purposes of Article III, and is outside the jurisdiction of the federal courts." *U.S. v. Sanchez-Gomez*, --- U.S. ---, 138 S. Ct. 1532, 1537, 200 L. Ed. 2d 792 (2018) (quotations and citation omitted); *see also Doyle*, 722 F.3d at 80 ("Under Article III of the U.S. Constitution, when a case becomes moot, the federal courts lack subject matter jurisdiction over the action." (quotations, alterations and citation omitted)).

2.   Claim to Compel Agency Action[9]

---

[9] Plaintiff's claim for mandamus under 28 U.S.C. § 1361 duplicates his claim under 5 U.S.C. § 706(1). *See Benzman v. Whitman*, 523 F.3d 119, 132 (2d Cir. 2008). "Mandamus may be awarded only if the plaintiff proves that (1) there is a clear right to the relief sought; (2) the Government has a plainly defined and peremptory duty to perform the act in question; and (3) there is no other adequate remedy available." *Id.* at 132-33.

Defendants contend, *inter alia*, that plaintiff's mandamus claim is moot. Plaintiff

contends, *inter alia*, that his mandamus claim is not moot because it "seeks a decision in

accordance with law, which the underlying agency decision was not." (Plaintiff's Memorandum

of Law in Opposition to Defendants' Motion ["Plf. Mem."] at 6). According to plaintiff, "[a]n

action seeking to compel a federal agency to act is not an action consenting for such agency to

act in any irrational way."[10]  (*Id.*).

Under the APA, the power to compel agency action is limited to action "unlawfully

withheld or unreasonably delayed[.]" 5 U.S.C. § 706(1); *see Benzman*, 523 F.3d at 130.

Plaintiff's conclusory contention, raised for the first time in his opposition to defendants' motion,

that defendants "unlawfully withheld and unreasonably delayed approval of the I-360 petition

---

[10] Plaintiff's conclusory and unsupported assertions, *inter alia*, (i) that "[i]t is an issue of fact as to how President Trump's invidious discrimination has infected the [DHS] and its various subagencies like [US]CIS[,]" (Plf. Mem. at 7; *see also id.* at 8); (ii) that as a result thereof, defendants' decisions were made for "invidious reasons," tainted by "invidious discrimination," constitute "invidious discretion" and "is a product of the Trump administration invective against immigrant children and people from undesirable countries such as Ecuador[,]" (*id.* at 7, 9); (iii) that "there is a factual issue . . . caused by an invidious scheme by the family court judges and clerks of the Queens County Family Court as part of their policy to delay and deny as many SIJ cases as possible[,]" (*id.* at 6; *see also id.* at 3, 7); and (iv) that "family court judges in Nassau and Queens have a penchant for scheduling such cases one day before the children's 21st birthdays[,]" (*id.* at 8), which are raised for the first time in his opposition to defendants' motion, have not been considered by the Court. In any event, plaintiff's contentions regarding the effect of any "invidious discrimination" or "invective" of the Trump administration on defendants' decisions are clearly without merit, as plaintiff's I-360 Petitions were denied in January and February 2016, and his appeals of those decisions were denied in November and December 2016, during the administration of President Barack Obama. President Trump did not take office until January 20, 2017.

Moreover, the Family Court held a hearing approximately five (5) weeks after the date the guardianship petition was verified and the summons was issued, and approximately twenty-three (23) days after plaintiff filed his motion for an order of "Special Findings." (AR 18, 106, 137). On the other hand, although plaintiff was in the United States for approximately four (4) years, during which time he resided with and received financial support from his girlfriend's mother and his future guardian, not from his parents, (*see* AR 46, 105, 116-17), he waited until approximately five (5) or six (6) weeks prior to his 21st birthday to file a guardianship petition, and approximately three (3) weeks prior to his 21st birthday to seek an order of "Special Findings." (AR 2, 16, 18, 104, 106, 112). Thus, while plaintiff may not have had "the final say of when his last family court hearing would be[,]" (Plf. Mem. at 8), he could have filed his guardianship petition and motion for "Special Findings" sooner. Furthermore, plaintiff has not named any judge, clerk or other personnel of the Family Court as a defendant in this action; nor proffered any evidence that defendants have any control over the alleged scheduling delays in the Family Court.

[sic] in this matter[,]" (Plf. Mem. at 11), seemingly conflates defendants' denial of his I-360

Petitions with a failure to act. However, "[a] 'failure to act' is not the same thing as a 'denial.'

The latter is the agency's act of saying no to a request; the former is simply the omission of an

action without formally rejecting a request-for example, the failure to promulgate a rule or take

some decision by a statutory deadline." *Norton v. Southern Utah Wilderness Alliance*, 542 U.S.

55, 63, 124 S. Ct. 2373, 159 L. Ed. 2d 137 (2004). Since plaintiff alleges that he "has suffered

legal wrong and been adversely affected and aggrieved through the failure to approve his I-360

petition [sic]," (Plf. Mem. at 12), he is clearly challenging defendants' denial of his requests; not

any "omission of an action without formally rejecting a request." *Norton*, 542 U.S. at 63, 124 S.

Ct. 2373.

       In addition, "the only agency action that can be compelled under the APA is action

legally *required*." *Norton*, 542 U.S. at 63, 124 S. Ct. 2373 (emphasis in original). "In this regard

the APA carried forward the traditional practice prior to its passage, when judicial review was

achieved through use of the so-called prerogative writs-principally writs of mandamus under the

All Writs Act, now codified at 28 U.S.C. § 1651(a). The mandamus remedy was normally

limited to enforcement of a specific, unequivocal command, . . . the ordering of a precise,

definite act [] about which an official had no discretion whatever[.]" *Norton*, 542 U.S. at 63, 124

S. Ct. 2373 (quotations, alterations and citations omitted). Thus, Section 706(1) "empowers a

court only to compel an agency to perform a ministerial or non-discretionary act, or to take

action upon a matter, without directing *how* it shall act." *Id.* at 64, 124 S. Ct. 2373 (emphasis in

original) (quotations and citation omitted); *accord Benzman*, 523 F.3d at 130. Accordingly, "a

claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a

*discrete* agency action that it is *required to take.*" *Norton*, 542 U.S. at 64, 124 S. Ct. 2373;

*accord Benzman*, 523 F.3d at 130. "The principal purpose of the APA limitations . . . -and of the

traditional limitations upon mandamus from which they were derived-is to protect agencies from

undue judicial interference with their lawful discretion, and to avoid judicial entanglement in

abstract policy disagreements which courts lack both expertise and information to resolve."

*Norton*, 542 U.S. at 66, 124 S. Ct. 2373.

Defendants denied plaintiff's I-360 Petitions, his appeals therefrom and his motions to

reopen and reconsider those decisions. Although plaintiff may not have received the outcome he

desired, he clearly received an adjudication of his I-360 Petitions from defendants. *See, e.g. Ji

Hye Song v. Sessions*, No. 17-cv-1682, 2018 WL 5084823, at * 2 (E.D.N.Y. Oct. 18, 2018)

(dismissing the plaintiff's claims seeking to compel USCIS to act on her I-485 application for

lack of subject matter jurisdiction because USCIS had denied her application and subsequently

denied her motion for reconsideration of the denial); *Feng Chen on behalf of Jiang Jinghon v.

Sessions*, 321 F. Supp. 3d 332, 337 (E.D.N.Y. 2018) (dismissing the plaintiff's claims seeking to

compel the defendants to adjudicate his visa applications as moot because the defendants had

adjudicated those applications, albeit unfavorably); *Mahon v. Johnson*, 321 F. Supp. 3d 320, 323

(E.D.N.Y. 2018) (dismissing the plaintiff's claim seeking to compel USCIS to adjudicate her

adjustment application because USCIS had already denied her second application). Accordingly,

the branch of defendants' motion seeking to dismiss plaintiff's claims to compel agency action

pursuant to 5 U.S.C. § 706(1) and mandamus claims pursuant to Rule 12(b)(1) of the Federal

Rules of Civil Procedure is granted and those claims are dismissed in their entirety for lack of

subject matter jurisdiction.

B.  Fed. R. Civ. P. 12(b)(6)

1.  Standard of Review

The standard of review on a motion made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is that a plaintiff plead sufficient facts "to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-- but it has not 'show[n]'-- 'that the pleader is entitled to relief.'" *Id.* at 679, 129 S. Ct. 1937 (brackets in original) (quoting Fed. R. Civ. P. 8(a)(2)). "Determining whether a complaint states a plausible claim for relief will[] . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

"A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937 (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. 1955). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. 544, 127 S. Ct. at 1959.

15

In deciding a motion pursuant to Rule 12(b)(6), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Kim v. Kimm*, 884 F.3d 98, 102-03 (2d Cir. 2018); *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017). However, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679, 129 S. Ct. 1937. "In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.*; *see also Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010).

Nonetheless, a plaintiff is not required to plead "specific evidence or extra facts beyond what is needed to make the claim plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120-21 (2d Cir. 2010); *accord Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 729-30 (2d Cir. 2013). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679, 129 S. Ct. 1937.

In deciding a motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must limit itself to the facts alleged in the complaint, which are accepted as true; to any documents attached to the complaint as exhibits or incorporated by reference therein; to matters of which judicial notice may be taken; or to documents upon the terms and effect of which the

16

complaint "relies heavily" and which are, thus, rendered "integral" to the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002); *see also Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230-31 (2d Cir. 2016). Since the complaint relies heavily upon the terms and effect of all of the documents contained in the administrative record, of which plaintiff clearly had notice, the Court has considered all of those documents as integral to the complaint. Moreover, "agency determinations and administrative findings are public records of which a court may properly take judicial notice." *Akran v. United States*, 997 F. Supp. 2d 197, 203 (E.D.N.Y. 2014), *aff'd*, 581 F. App'x 46 (2d Ci. Oct. 16, 2014) (quotations, alterations and citation omitted).[11]

### 2.  APA Review

The standard of review under 5 U.S.C. § 706(2)(A) "is highly deferential and presumes the agency's action to be valid." *Residents for Sane Trash Sols., Inc. v. U.S. Army Corps. of Eng'rs*, 31 F. Supp. 3d 571, 588 (S.D.N.Y. 2014), *appeal dismissed*, No. 14-3396 (2d Cir. Oct. 15, 2014); *see also Coal. on W. Valley Nuclear Wastes v. Bodman*, 625 F. Supp. 2d 109, 116 (W.D.N.Y. 2007), *aff'd sub nom Coal. on W. Valley Nuclear Wastes v. Chu*, 592 F.3d 306 (2d Cir. 2009) ("An agency's decision is accorded a presumption of regularity. . . ." (quotations and citation omitted)). The Court "must consider whether the [agency's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 91 S. Ct. 814, 28 L. Ed. 2d 136

---

[11]  Indeed, plaintiff concedes that the "complaint raises pure questions of law and is thus appropriate for APA review by this Court." (Plf. Mem. at 6).

(1971). "Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency." *Volpe*, 401 U.S. at 416, 91 S. Ct. 814; *see also Natural Res. Defense Council, Inc. v. F.A.A. ("NRDC")*, 564 F.3d 549, 555 (2d Cir. 2009) (holding that under the deferential standard of review set forth in Section 706(2)(A), courts "cannot substitute [their] judgment for that of the agency.") "The record must show that the agency [] examined the relevant data and articulated a satisfactory explanation for its action[;] . . . [and] the agency's decision must reveal a rational connection between the facts found and the choice made." *NRDC*, 564 F.3d at 555 (quotations, alterations and citations omitted); *see also Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S. Ct. 2856, 77 L. Ed. 2d 443 (1983) ("[T]he agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." (quotations and citation omitted)). In reviewing the agency's explanation, the court "must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Motor Vehicle Mfrs.*, 463 U.S. at 43, 103 S. Ct. 2856. "If there is sufficient evidence in the record to provide rational support for the choice made by the agency, [the court] must uphold its decision." *Constitution Pipeline Co. v. New York State Dep't of Envtl. Conservation*, 868 F.3d 87, 102 (2d Cir. 2017), *cert. denied*, 138 S. Ct. 1697, 200 L. Ed. 2d 953 (2018) (quotations and citation omitted).

"Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence

18

before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs.*, 463 U.S. at 43, 103 S. Ct. 2856. Although the reviewing court "may not supply a reasoned basis for the agency's action that the agency itself has not given[,]" the agency's decision should be upheld, even if it is "of less than ideal clarity,[] if the agency's path may reasonably be discerned." *Id.* (quotations and citation omitted); *accord F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 513-14, 129 S. Ct. 1800, 173 L. Ed. 2d 738 (2009). "[T]he party challenging the decision has the burden of proof." *Bodman*, 625 F. Supp. 2d at 116; *see also Miezgiel v. Holder*, 33 F. Supp. 3d 184, 189 (E.D.N.Y. 2014) ("Plaintiffs bear the burden of showing, by citation to evidence in the administrative record, that an agency's actions are arbitrary and capricious.")

a.   Claims pursuant to 8 U.S.C. §§ 1101(a)(27)(J) and 8 C.F.R. § 204.11[12]

"The Immigration and Nationality Act of 1990 included a new form of immigration relief for non-citizen children." *Budhathoki v. Nielsen*, 898 F.3d 504, 508 (5th Cir. 2018). As relevant here, "SIJ status provides a path for certain children to become lawful residents of the United States." *Id.* Specifically, "Congress established SIJ status in 1990 in order to protect abused, neglected or abandoned children who, with their families, illegally entered the United States, . . . and it entrusted the review of SIJ petitions to USCIS, a component of DHS."[13] *Osorio-Martinez*

---

[12] Plaintiff's claims alleging that defendants violated the INA and its implementing regulations are construed as seeking judicial review of the decisions denying his I-360 Petitions pursuant to 5 U.S.C. § 706(2), which empowers the reviewing court, *inter alia*, to "hold unlawful and set aside agency action, findings, and conclusions found to be—(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. . . ."

[13] "Once attained, SIJ classification conveys a host of important benefits." *Osorio-Martinez*, 893 F.3d at 163 (citing, *inter alia*, 8 U.S.C. §§ 1153(b)(4), 1232(d)(4)(A), 1255(a) and (h)(1) and (2), 1182(a)); *see also Reyes v.*

*v. Attorney General United States of America*, 893 F.3d 153, 162 (3d Cir. 2018) (quotations and

citations omitted); *see also* USCIS Policy Manual, vol. 6, pt. J Chapter 1,

https://www.uscis.gov/policymanual (last visited Jan. 30, 2019).

    Under Section 101(a)(27)(J) of the INA, SIJ status is available to:

> "an immigrant who is present in the United States--(i) who has been declared
> dependent on a juvenile court located in the United States or whom such a court
> has legally committed to, or placed under the custody of, an agency or department
> of a State, or an individual or entity appointed by a State or juvenile court located
> in the United States, and whose reunification with 1 or both of the immigrant's
> parents is not viable due to abuse, neglect, abandonment, or a similar basis found
> under State law; (ii) for whom it has been determined in administrative or judicial
> proceedings that it would not be in the alien's best interest to be returned to the
> alien's or parent's previous country of nationality or country of last habitual
> residence; and (iii) in whose case the Secretary of Homeland Security consents to
> the grant of special immigrant juvenile status, except that-- (I) no juvenile court has
> jurisdiction to determine the custody status or placement of an alien in the custody
> of the Secretary of Health and Human Services unless the Secretary of Health and
> Human Services specifically consents to such jurisdiction; and (II) no natural parent
> or prior adoptive parent of any alien provided special immigrant status under this
> subparagraph shall thereafter, by virtue of such parentage, be accorded any right,
> privilege, or status under this chapter. . . ." (emphasis added).

8 U.S.C. § 1101(a)(27)(J); *see also Boyron v. Lynch*, 604 F. App'x 72, 73-74 (2d Cir. May 20,

2015) (summary order) ("To be eligible for SIJS [Special Immigrant Juvenile Status], an alien

must establish that he 'has been declared dependent on a juvenile court ... or ... has [been] legally

committed to, or placed under the custody of, an agency or department of a State, or an

individual or entity appointed by a State or juvenile court.' 8 U.S.C. § 1101(a)(27)(J)(i). In

addition, he must demonstrate that "reunification with 1 or both ... parents is not viable due to

---

*Cissna*, 737 F. App'x 140, 142 (4th Cir. June 8, 2018) (summary order) ("Obtaining SIJ status is a significant benefit
because such an alien . . . is potentially eligible for lawful permanent resident status irrespective of her immigration
status[,] . . . [and] may eventually apply for United States citizenship." (citing 8 U.S.C. §§ 1153(b)(4) and
1154(a)(1)(G))); USCIS Policy Manual, vol. 7, pt. F Chapter 7, https://www.uscis.gov/policymanual (last visited
Jan. 30, 2019).

abuse, neglect, abandonment, or a similar basis found under State law ... [and that] it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality.' *Id.* § 1101(a)(27)(J)(i), (ii). Finally, the Secretary of [DHS] must consent to the grant of SIJS. *Id.* § 1101(a)(27)(J)(iii)." (alterations in original)); *Osorio-Martinez*, 893 F.3d at 163 ("Alien children may receive SIJ status only after satisfying a set of rigorous, congressionally defined eligibility criteria, including that a juvenile court find it would not be in the child's best interest to return to her country of last habitual residence and that the child is dependent on the court or placed in the custody of the state or someone appointed by the state. 8 U.S.C. § 1101(a)(27)(J); 8 C.F.R. § 204.11(c). The child must also receive approval from USCIS and the consent of the Secretary of [DHS] to obtain the status. 8 U.S.C. § 1101(a)(27)(J).")

The implementing regulations define the term "juvenile court" to mean "a court located in the United States having jurisdiction under State law to make judicial determinations about the custody and care of juveniles." 8 C.F.R. § 204.11(a). The regulations provide, in relevant part, that "an alien may not be classified as a[n] [SIJ] unless the alien is the beneficiary of an approved petition to classify an alien as a special immigrant under section 101(a)(27) of the [INA]. The petition must be filed on Form I-360. . . ." *Id.*, § 204.11(b).

In addition, the regulations provide, in pertinent part:

> "(c) Eligibility. An alien is eligible for classification as a special immigrant under section 101(a)(27)(J) of the [INA] if the alien: (1) Is under twenty-one years of age; (2) Is unmarried; (3) Has been declared dependent upon a juvenile court located in the United States in accordance with state law governing such declarations of dependency, while the alien was in the United States and under the jurisdiction of the court; (4) Has been deemed eligible by the juvenile court for long-term foster care; (5) Continues to be dependent upon the juvenile court and eligible for long-term foster care, such declaration, dependency or eligibility not having been

vacated, terminated, or otherwise ended; and (6) Has been the subject of judicial proceedings or administrative proceedings authorized or recognized by the juvenile court in which it has been determined that it would not be in the alien's best interest to be returned to the country of nationality or last habitual residence of the beneficiary or his or her parent or parents. . . .

(d) Initial documents which must be submitted in support of the petition. (1) Documentary evidence of the alien's age, in the form of a birth certificate, passport, official foreign identity document issued by a foreign government, . . . or other document which in the discretion of the director establishes the beneficiary's age; *and* (2) One or more documents which include: (i) A juvenile court order, issued by a court of competent jurisdiction located in the United States, showing that the court has found the beneficiary to be dependent upon that court; (ii) A juvenile court order, issued by a court of competent jurisdiction located in the United States, showing that the court has found the beneficiary eligible for long-term foster care; and (iii) Evidence of a determination made in judicial or administrative proceedings by a court or agency recognized by the juvenile court and authorized by law to make such decisions, that it would not be in the beneficiary's best interest to be returned to the country of nationality or last habitual residence of the beneficiary or of his or her parent or parents."

8 C.F.R. § 204.11 (emphasis added); *see also* USCIS Policy Manual, vol. 6, pt. J Chapter 2,

https://www.uscis.gov/policymanual (last visited Jan. 30, 2019) ("A petitioner must satisfy the

following requirements to qualify for SIJ classification: . . . Under the age of 21 *on the date of*

*filing* the [I-360 Petition][;] Juvenile court order (or orders) issued in the United States that meets

the specified requirements [and] [DHS] consent. . . ." (emphasis added))[14]. Thus, "[o]nce the

applicant has the necessary predicate [juvenile court] order, he must submit his application to the

agency, attaching the state court order." *Budhathoki*, 898 F.3d at 508; *see also Osorio-Martinez*,

893 F.3d at 170 (holding that once an applicant has obtained the necessary order of dependency

---

[14]  The Policy Manual further provides, in relevant part, that "USCIS considers the petitioner's age *at the time the SIJ petition is filed* when determining whether the petitioner has met the age requirement." USCIS Policy Manual, vol. 6, pt. J Chapter 2, https://www.uscis.gov/policymanual (last visited Jan. 30, 2019) (emphasis added) (citing Section 235(d)(6) of the 2008 TVPRA). In addition, the Policy Manual provides, in pertinent part, that "[i]f a petitioner was under 21 years of age on the date of the *proper* filing of Form I-360, USCIS cannot deny SIJ classification solely because the petitioner is older than 21 years of age at the time of adjudication." *Id.* (emphasis added).

from a state juvenile court, he or she "must then file an application with USCIS, along with 'sufficient evidence to establish [] eligibility' and the associated filing fee." (quoting 6 USCIS Policy Manual, pt. J, ch. 4)); USCIS Policy Manual, vol. 6, pt. J Chapter 2, https://www.uscis.gov/policymanual (last visited Jan. 30, 2019) ("USCIS' adjudication of the SIJ petition includes review of the petition, the juvenile court order (or orders), and supporting evidence to determine if the petition is eligible for SIJ classification.")

Pursuant to the INA, "[w]henever any person makes application for a visa or any other document required for entry, or makes application for admission, or otherwise attempts to enter the United States, the burden of proof shall be upon such person to establish that he is eligible to receive such visa or such document, or is not inadmissible under any provision of this chapter, and, if an alien, that he is entitled to the nonimmigrant, immigrant, special immigrant, immediate relative, or refugee status claimed, as the case may be." 8 U.S.C. § 1361. Thus, an individual petitioning for SIJ status "bears the burden of establishing eligibility [therefor]." *Budhathoki*, 898 F.3d at 508-09; *see also Reyes*, 737 F. App'x at 142 ("The applicant bears the burden of proving she is entitled to SIJ status.")

Moreover, "[a]n applicant or petitioner must establish that he or she is eligible for the requested benefit *at the time of filing the benefit request* and must continue to be eligible through adjudication. Each benefit request must be properly completed and *filed with all initial evidence required* by applicable regulations and other USCIS instructions. . . ." 8 C.F.R. § 103.2(b)(1) (emphasis added). "If all required initial evidence is not submitted with the benefit request or does not demonstrate eligibility, USCIS in its discretion may deny the benefit request for lack of initial evidence or for ineligibility or request that the missing initial evidence be submitted within

a specified period of time as determined by USCIS." 8 C.F.R. § 103.2(b)(8)(ii).

Plaintiff has not satisfied his burden of showing that defendants' decisions denying his I-360 Petitions were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2)(A). Plaintiff cites no law in support of his assertion that "all that was required" to grant his First I-360 Petition was that "the required family court orders were in effect before [his] 21st birthday." (Plf. Mem. at 7; *see also Id.* at 9 ["By the time [US]CIS reviewed the [First] I-360 [Petition], it was true that the family court orders were approved"]; and *Id.* at 12 ["The agency acted arbitrarily in denying [plaintiff's] I-360 petition because the family court orders were sent to [US]CIS after it had received the initial I-360 petition."]). Indeed, the relevant law, set forth above, indicates otherwise, *i.e.*, that an alien applying for SIJ classification must obtain the necessary juvenile court order(s) prior to filing his or her I-360 application, together with the initial evidence required to establish eligibility under 8 C.F.R. § 204.11(d), with USCIS. *See* 8 C.F.R. § 103.2(b)(1); *e.g. Budhathoki*, 898 F.3d at 508; *Osorio-Martinez*, 893 F.3d at 170; USCIS Policy Manual, vol. 6, pt. J Chapter 2, https://www.uscis.gov/policymanual (last visited Jan. 30, 2019). Since at the time plaintiff filed his First I-360 Petition, he had not been "declared dependent on a juvenile court ... or ... legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court," 8 U.S.C. § 1101(a)(27)(J)(i); nor had it been determined in any "administrative or judicial proceedings that it would not be in [plaintiff's] best interest to be returned to [his] or [his] parent's previous country of nationality or country of last habitual residence," *id.*, § 1101(a)(27)(J)(ii), he was not a "special immigrant"

within the meaning of Section 101(a)(27)(J) of the INA.[15]

Nor was plaintiff eligible for SIJ classification at the time his Second I-360 Petition was filed on September 11, 2015, *i.e.*, his twenty-first (21st) birthday, since he was not "*under twenty-one years of age,*" 8 C.F.R. § 204.11(c)(1) (emphasis added), "at the time of filing." *Id.*, § 103.2(b)(1).

Plaintiff also has not satisfied his burden of showing that defendants' alleged failure to send him an RFE, providing him additional time to submit documentation missing from his First I-360 Petition, was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2)(A). The applicable regulation, 8 C.F.R. § 103.2(b), provides, in relevant part:

> "(8) Request for Evidence; Notice of Intent to Deny—
>
> (i) Evidence of eligibility or ineligibility. If the evidence submitted with the benefit request establishes eligibility, USCIS will approve the benefit request, except that in any case in which the applicable statute or regulation makes the approval of a benefit request a matter entrusted to USCIS discretion, USCIS will approve the benefit request only if the evidence of record establishes both eligibility and that the petitioner or applicant warrants a favorable exercise of discretion. If the record evidence establishes ineligibility, the benefit request will be denied on that basis.
>
> (ii) Initial evidence. If all required initial evidence is not submitted with the benefit request or does not demonstrate eligibility, USCIS *in its discretion* may deny the benefit request for lack of initial evidence or for ineligibility or request that the missing initial evidence be submitted within a specified period of time as determined by USCIS.
>
> (iii) Other evidence. If all required initial evidence has been submitted but the evidence submitted does not establish eligibility, USCIS may: deny the benefit

---

[15] Regardless of whether the dependency order required by 8 U.S.C. § 1101(a)(27)(J), *i.e.*, the Guardianship Order, took effect when it was pronounced by the Family Court on September 10, 2015, or on the date the written order was signed, *i.e.*, January 15, 2016, (*see* Plf. Mem. at 1-2, 5, 9, 12), it clearly was not in effect at the time plaintiff filed his First I-360 Petition on September 3, 2015. Thus, either way, plaintiff was not eligible for SIJ classification at the time he filed his First I-360 Petition.

request for ineligibility; request more information or evidence from the applicant or petitioner, to be submitted within a specified period of time as determined by USCIS; or notify the applicant or petitioner of its intent to deny the benefit request and the basis for the proposed denial, and require that the applicant or petitioner submit a response within a specified period of time as determined by USCIS.

(iv) Process. A request for evidence or notice of intent to deny will be communicated by regular or electronic mail and will specify the type of evidence required, and whether initial evidence or additional evidence is required, or the bases for the proposed denial sufficient to give the applicant or petitioner adequate notice and sufficient information to respond. The request for evidence or notice of intent to deny will indicate the deadline for response, but in no case shall the maximum response period provided in a request for evidence exceed twelve weeks, nor shall the maximum response time provided in a notice of intent to deny exceed thirty days. Additional time to respond to a request for evidence or notice of intent to deny may not be granted.

* * *

(11) Responding to a request for evidence or notice of intent to deny. In response to a request for evidence or a notice of intent to deny, and within the period afforded for a response, the applicant or petitioner may: submit a complete response containing all requested information at any time within the period afforded; submit a partial response and ask for a decision based on the record; or withdraw the benefit request. All requested materials must be submitted together at one time, along with the original USCIS request for evidence or notice of intent to deny. Submission of only some of the requested evidence will be considered a request for a decision on the record.

(12) Effect where evidence submitted in response to a request does not establish eligibility at the time of filing. A benefit request shall be denied where evidence submitted in response to a request for evidence does not establish filing eligibility *at the time the benefit request was filed*. A benefit request shall be denied where any benefit request upon which it was based was filed subsequently." (emphasis added).

Initially, it is clear from the plain language of that regulation that USCIS is not required to send an RFE or NOID to a petitioner whenever a benefit request fails to include all required evidence. Rather, the USCIS has the discretion to either deny the benefit request or request the submission of the omitted evidence. *See Id.*, § 103.2(b)(8)(ii).

26

In any event, contrary to plaintiff's contention that USCIS did not comply with 8 C.F.R. § 103.2(b)(8) because "[n]o RFE was ever sent to [him]," (Plf. Mem. at 8; *see also id.* at 9, 12), USCIS sent plaintiff an NOID in accordance with that regulation on December 21, 2015, indicating, *inter alia*, (i) that it intended to deny his First I-360 Petition because (A) he did not submit a copy of his birth certificate or other evidence of his age, nor copies of the Family Court orders upon which his claim to eligibility for SIJ classification was based, and (B) he merely wrote the word "pending" in part 6 of the petition, "which asks if you have been declared dependent upon a juvenile court of the United States and if a juvenile court has declared that reunification with one or both of your parents is not viable due to abuse, neglect, abandonment, or a similar basis under state law," (AR at 14-16; Compl., ¶ 21); (ii) that before its decision became final, plaintiff could submit documentary evidence to "overcome the deficiencies forming the grounds for the intended denial," (AR at 14); (iii) that plaintiff had thirty (30) days from the date thereof, *i.e.*, until January 20, 2016, to submit his response "and any additional information and/or evidence to support [his] positions[,]" (*id.* at 16); and (iv) that "[n]o extension of time beyond the stated thirty (30) day period [would] be permitted." (*Id.*).

Although USCIS received plaintiff's timely response to the NOID, providing, *inter alia*, copies of the Family Court orders missing from his First I-360 Petition, (AR at 17-20), since the Family Court orders did not even exist at the time that petition was filed, such evidence did not establish his eligibility for SIJ classification "at the time the benefit request was filed." 8 C.F.R. § 103.2(b)(12). Since plaintiff cannot demonstrate that defendants' actions in denying his I-360 Petitions and allegedly failing to send him an RFE providing him with additional time to submit documentation missing from his First I-360 Petition were "arbitrary, capricious, an abuse of

discretion, or otherwise not in accordance with law[,]" 5 U.S.C. § 706(2)(A), the branch of

defendants' motion seeking to dismiss those claims pursuant to Rule 12(b)(6) of the Federal

Rules of Civil Procedure is granted and plaintiff's APA claims alleging violations of 8 U.S.C. §

1101(a)(27)(J) and 8 C.F.R. § 204.11 (first and fifth claims for relief) are dismissed in their

entirety with prejudice.[16]

### b.   Validity of 8 C.F.R. § 204.11[17]

Plaintiff's sixth claim for relief alleges that defendants have "violated provisions of the

[APA] in making 8 C.F.R. § 204.11 a rule as it contradicts 8 U.S.C. § 1101(a)(27)(J) and is thus

an impermissible interpretation of the statute." (Compl., ¶¶ 60-62).

Pursuant to *Chevron, U.S.A., Inc. v. Natural Res. Defense Council, Inc.*, 467 U.S. 837,

104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984), federal courts "apply a two-step inquiry to an agency's

interpretation of a statute." *Cappetta v. Comm'r of Soc. Sec. Admin.*, 904 F.3d 158, 166 (2d Cir.

2018). In *Chevron*, the Supreme Court held:

> "When a court reviews an agency's construction of the statute which it administers,
> it is confronted with two questions. First, always, is the question whether Congress
> has directly spoken to the precise question at issue. If the intent of Congress is clear,
> that is the end of the matter; for the court, as well as the agency, must give effect to
> the unambiguously expressed intent of Congress. If, however, the court determines
> Congress has not directly addressed the precise question at issue, the court does not

---

[16] Plaintiff's contentions regarding the Government's allegedly erroneous interpretation of New York law in its
memorandum of law in support of defendants' motion, (*see* Plf. Mem. at 4, 10-11), are irrelevant to this Court's
review of defendants' decisions. Plaintiff's First I-360 Petition was not denied based upon his age, and it is clear that
defendants denied plaintiff's Second I-360 Petition based upon the applicable federal law; not the New York law
challenged by plaintiff. Indeed, plaintiff concedes that the New York law to which the Government refers in its
memorandum of law "may not have been a factor in [his] case." (*Id.* at 10). Accordingly, this Court has not
considered the Government's interpretation of that New York law, which as not at issue in this matter, nor plaintiff's
contentions challenging such interpretation.

[17] Plaintiff does not challenge the validity of 8 C.F.R. § 103.2; only the validity of 8 C.F.R. § 204.11.

> simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute."

*Id.* at 842-43, 104 S. Ct. 837. As explained by the Supreme Court:

> "The power of an administrative agency to administer a congressionally created [] program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress. . . . If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute. Sometimes the legislative delegation to an agency on a particular question is implicit rather than explicit. In such a case, a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency."

*Chevron*, 467 U.S. at 843-44, 104 S. Ct. 2778 (quotations, alterations and citation omitted); *see also Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs*, 545 U.S. 967, 980, 125 S. Ct. 2688, 162 L. Ed. 2d 820 (2005) ("[A]mbiguities in statutes within an agency's jurisdiction to administer are delegations of authority to the agency to fill the statutory gap in reasonable fashion. Filling these gaps . . . involves difficult policy choices that agencies are better equipped to make than courts. . . . If a statute is ambiguous, and if the implementing agency's construction is reasonable, *Chevron* requires a federal court to accept the agency's construction of the statute, even if the agency's reading differs from what the court believes is the best statutory interpretation." (citations omitted)).

"*Chevron* deference is appropriate where Congress has delegated authority to an administrative agency to make rules carrying the force of law and that agency's interpretation to which deference is to be given was promulgated in the exercise of that authority." *Woods v. START Treatment & Recovery Ctrs., Inc.*, 864 F.3d 158, 168 (2d Cir. 2017); *see also U.S. v.*

*Mead Corp.*, 533 U.S. 218, 226-27, 121 S. Ct. 2164, 150 L. Ed. 2d 292 (2001)

("[A]dministrative implementation of a particular statutory provision qualifies for *Chevron*

deference when it appears that Congress delegated authority to the agency generally to make

rules carrying the force of law, and that the agency interpretation claiming deference was

promulgated in the exercise of that authority.") Since 8 C.F.R. § 204.11 was promulgated

pursuant to Congress's delegation of authority, *see* 58 Fed. Reg, 42843-01 (Aug. 12, 1993),

*Chevron* deference is appropriate.

At the first step of the *Chevron* analysis, the court "examine[s] the regulation [at issue]

against the statute that contains the agency's charge[,]" *Cooling Water Intake Structure Coal. v.*

*EPA*, 905 F.3d 49, 64-65 (2d Cir. 2018) (quotations, alterations and citation omitted), to

determine whether the agency has followed the "unambiguously expressed intent of Congress."

*Chevron*, 467 U.S. at 842-43, 104 S. Ct. 2778 (quotations and citation omitted). In other words,

"[t]he first step of the *Chevron* analysis is determining whether the statute is ambiguous or silent

on the specific question at issue." *Woods*, 864 F.3d at 168.

"When Congress has explicitly left a gap for an agency to fill, there is an express

delegation of authority to the agency to elucidate a specific provision of the statute by regulation

. . . and any ensuing regulation is binding in the courts unless procedurally defective, arbitrary or

capricious in substance, or manifestly contrary to the statute." *Mead*, 533 U.S. at 227, 121 S. Ct.

2164 (quotations and citation omitted). In other words, the court must determine "whether the

agency's interpretation [of the statute] is 'reasonable.'" *Cappetta*, 904 F.3d at 166 (quoting

*Michigan v. EPA*, --- U.S. ---, 135 S. Ct. 2699, 2707, 192 L. Ed. 2d 674 (2015)); *see also Fed.*

*Hous. Fin. Agency for Fed. Nat'l Mortg. Ass'n v. Nomura Holding Am., Inc.*, 873 F.3d 85, 139

(2d Cir. 2017), *cert. denied*, 138 S. Ct. 2679, 201 L. Ed. 2d 1073 (2018) ("*Chevron* requires a federal court to accept a federal agency's construction of a statute so long as the statute is ambiguous and the agency's interpretation is reasonable." (quotations, alterations and citation omitted)). "The court need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding." *Chevron*, 467 U.S. at 843, n. 11, 104 S. Ct. 2778; *see also Woods*, 864 F.3d at 169 ("[S]o long as the [agency's] interpretation is reasonable, [the reviewing court] defer[s] to it 'whether or not it is the only possible interpretation or even the one a court might think best.'" (quoting *Holder v. Martinez Gutierrez*, 566 U.S. 583, 591, 132 S. Ct. 2011, 182 L. Ed. 2d 922 (2012))). "[C]onsiderable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer. . . ." *Chevron*, 467 U.S. at 844, 104 S. Ct. 2778.

Section 101(a)(27)(J) of the INA expressly defines the term "special immigrant" to mean, with exceptions not relevant here:

> "an immigrant who is present in the United States-- (i) who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law; (ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence; and (iii) in whose case the Secretary of Homeland Security consents to the grant of special immigrant juvenile status. . . ."

8 U.S.C. § 1101(a)(27)(J). The statute, *inter alia*, does not define the term "juvenile court," and

is silent with respect to how an immigrant may apply for SIJ status.[18]

Although plaintiff alleges that "[d]efendants violated provisions of the [APA] in making 8 C.F.R. § 204.11 a rule as it contradicts 8 U.S.C. § 1101(a)(27)(J) and is thus an impermissible interpretation of the statute[,]" (Compl., ¶ 61), the complaint does not identify any specific provision of § 204.11 that actually contradicts the statute; nor otherwise indicate how that regulation is based upon an impermissible construction of the statute.[19]  Subsection (a) of the regulation defines the terms "juvenile court" and "eligible for long-term foster care," which are not defined in the statute. 8 C.F.R. § 204.11(a). Subsection (b) of the regulation prescribes who may file the petition for SIJ classification and how to do so, *id.*, matters on which the statute is silent. Subsection (c) of the regulation provides who is eligible for SIJ classification under the

_____

[18]  Moreover, although the language of 8 U.S.C. § 1101(a)(27)(J) does not expressly indicate that the applicant must be a juvenile, minor, child, or otherwise of or under a certain age, it is clear by, *inter alia*, the statutory language, including the references to "juvenile court," "custody," "reunification with parents" and "special immigrant juvenile status," none of which are specifically defined in the INA, that Congress intended that provision to apply only to juvenile immigrants, *i.e.*, immigrants of or under a certain age. Indeed, other provisions of the INA specifically refer to an immigrant applying for, or granted, special immigrant status under 8 U.S.C. § 1101(a)(27)(J) as a "child." *See, e.g.* 8 U.S.C. § 1232(d)(4)(A) ("A child who has been granted special immigrant status under section 101(a)(27)(J) of the [INA]. . . ."); *Id.* § 1232(d)(6) ("[A]n alien described in section 101(a)(27)(J) of the [INA] . . . may not be denied special immigrant status under such section after December 23, 2008 based on age if the alien was a child on the date on which the alien applied for such status.") The term "child" is defined in the INA to mean, in relevant part, "an unmarried person under twenty-one years of age." 8 U.S.C. § 1101(b). Thus, the eligibility criteria of 8 C.F.R. § 204.11, requiring, *inter alia*, that an alien applying for SIJ classification under Section 101(a)(27)(J) of the INA be under twenty-one (21) years of age and unmarried, 8 C.F.R. § 204.11(c)(1) and (2), are clearly consistent with the statute.

[19]  In his opposition to defendants' motion, plaintiff contends, for the first time, that USCIS's alleged requirement that the Family Court "orders must reach [it] before the [applicant's] 21st birthday . . . runs afoul of the statute which allows minors to apply for SIJ status until they are 21 years of age." (Plf. Mem. at 7-8). However, as set forth above, since plaintiff had not been "declared dependent on a juvenile court located in the United States or . . . legally committed to, or placed under the custody of . . . an individual or entity appointed by a State or juvenile court located in the United States," 8 U.S.C. § 1101(a)(27)(J)(i); nor had it been "determined in administrative or judicial proceedings that it would not be in [his] best interest to be returned to [his] or [his] parent's previous country of nationality or country of last habitual residence," *id.*, § 1101(a)(27)(J)(ii), when he filed his First I-360 Petition, he was not a "special immigrant" within the meaning of Section 101(a)(27)(J) of the INA when he filed the benefit request. Moreover, as set forth below, the "age-out" provision of Section 235(d)(6) of the 2008 TVPRA does not save plaintiff's First I-360 Petition because it was not denied based upon plaintiff's age; but rather because plaintiff was not eligible for SIJ classification at the time of filing the First I-360 Petition.

statute and generally mirrors the statutory requirements. *Compare id.*, § 204.11(c) *with* 8 U.S.C. §§ 1101(a)(27)(J) and (b). Subsection (d) of the regulation prescribes the "[i]nitial documents which must be submitted in support of the petition" in order to establish eligibility for SIJ classification. *Compare* 8 C.F.R. § 204.11(d) *with* 8 U.S.C. § 1101(a)(27)(J)(i)-(ii). Subsection (e) of the regulation provides for notice to the petitioner of a decision on his or her petition for SIJ classification, the reasons for a denial and the right to appeal the decision. 8 C.F.R. § 204.11(e). None of those provisions contradict the statute, either directly or indirectly, and are otherwise reasonable and permissible constructions of 8 U.S.C. § 1101(a)(27)(J). Accordingly, the branch of defendants' motion seeking dismissal of plaintiff's claim challenging the validity of 8 C.F.R. § 204.11 (sixth claim for relief) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted and that claim is dismissed in its entirety with prejudice.

### c. Claim pursuant to 8 U.S.C. § 1232(d)(6)

Section 235(d)(6) of the 2008 TVPRA provides: "Notwithstanding any other provision of law, an alien described in section 101(a)(27)(J) of the [INA] . . . may not be denied special immigrant status under such section after December 23, 2008 *based on age* if the alien was a child *on the date on which the alien applied for such status*." 8 U.S.C. § 1232(d)(6) (emphasis added). Plaintiff contends, *inter alia*, that since the Family Court orders were issued on September 10, 2015, the day before his twenty-first (21st) birthday, USCIS (i) "may not deny" his First I-360 Petition, which was filed on September 3, 2015, pursuant to 8 U.S.C. § 1232(d)(6) because he had "applied for special immigrant findings before his 21st birthday," (Plf. Mem. at 1-2); and (ii) "was required to grant the [First] I-360 [Petition] with no orders attached, because [it]

could have checked with the Queens County Family Court that the required judicial findings (and orders) were issued one day before [his] 21st birthday." (*Id.* at 2; *see also Id.* at 5 ["[US]CIS and the federal government were bound by [the Family Court] order[s] when the family court judge ruled from the bench"]; and *Id.* at 9 ["By the time [US]CIS reviewed the [First] I-360 [Petition], it was true that the family court orders were approved."]).

Plaintiff's contentions are without merit. Defendants did not violate 8 U.S.C. § 1232(d)(6) in denying plaintiff's First I-360 Petition because, *inter alia*, plaintiff's First I-360 Petition was not denied based on plaintiff's age. Rather, it was denied, *inter alia*, because plaintiff was not eligible for SIJ classification at the time he filed the First I-360 Petition since, *inter alia*, he was not the subject of a valid juvenile court order containing a dependency or custody determination, as required by 8 U.S.C. § 1101(a)(27)(J), at the time of filing. (*See* AR at 21-23, 68-70, 140-146).

Although plaintiff's Second I-360 Petition was denied based on his age, he was not a child, *i.e.*, under twenty-one (21) years of age, on the date on which he filed that application, since it was filed on his twenty-first (21st) birthday. Accordingly, defendants also did not violate 8 U.S.C. § 1232(d)(6) in denying plaintiff's Second I-360 Petition. Therefore, the branch of defendants' motion seeking to dismiss plaintiff's claim alleging that they violated 8 U.S.C. § 1232(d)(6) by failing to grant his I-360 Petitions (second claim for relief) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted and that claim is dismissed in its entirety with prejudice.

3.  The *Perez-Olano* Settlement Agreement

Plaintiff does not address defendants' contention that his claim alleging a violation of the *Perez-Olano* Settlement Agreement (third claim for relief) is without merit and, thus, he has seemingly abandoned that claim. *See, e.g. Wilkov v. Ameriprise Fin. Servs., Inc.*, --- F. App'x ---, 2018 WL 5603580, at * 1, n. 1 (2d Cir. Oct. 30, 2018) (summary order) (affirming the district court's dismissal of the plaintiff's claims as "abandoned" because she failed to oppose them in her opposition to the defendant's motion to dismiss); *New World Sols., Inc. v. NameMedia Inc.*, 150 F. Supp. 3d 287, 331 (S.D.N.Y. 2015) ("When a party offers no response to its opponent's motion to dismiss a claim, that claim is abandoned." (quotations, alterations and citation omitted)).

In any event, plaintiff's claim is without merit. The case *Perez-Olano* was a class action commenced on behalf of "(i) juveniles whose requests for specific consent to state court jurisdiction [DHS] denied or failed to decide prior to the juveniles' attaining 18 years of age ('Specific Consent Subclass'); and (ii) juveniles whose petitions for SIJ status DHS denied or revoked pursuant to 8 C.F.R. §§ 204.11(c)(1) or (5), or 205.1(a)(3)(iv)(A), (C), or (D) ('Age-Out Subclass') . . . ." *Perez-Olano v. Holder*, No. 05-cv-3604, 2010 WL 9594539 (C.D. Cal. Aug. 31, 2010). Paragraph 23 of the *Perez-Olano* Settlement Agreement provides, in pertinent part, "Defendant USCIS shall not deny a class member's application for SIJ classification or SIJ-based adjustment of status on account of age or dependency status, if, at the time the class member files or filed a *complete* application for SIJ classification, he or she was under 21 years of age or was the subject of a valid dependency order that was subsequently terminated based on age. . . ." *Id.* (emphasis added).

35

Although plaintiff was under twenty-one (21) years of age when he filed the First I-360 Petition, he did not file a complete application at that time, *i.e.*, he did not attach the initial evidence required by 8 C.F.R. § 204.11(d). Indeed, since the Family Court orders did not even exist at the time plaintiff filed the First I-360 Petition, he was not the subject of a valid dependency order at the time of filing. Accordingly, defendants did not deny plaintiff's First I-360 Petition on account of his age, or because he "was the subject of a valid dependency order that was subsequently terminated based on age;" but rather because, *inter alia*, he had not established his eligibility for SIJ classification at the time of filing. (*See* AR at 21-23, 68-70, 140-146).

Although defendants denied plaintiff's Second I-360 Petition on account of his age, plaintiff was not under twenty-one (21) years of age at the time he filed that petition. Accordingly, the branch of defendants' motion seeking to dismiss plaintiff's claim alleging that defendants violated the *Perez-Olano* Settlement Agreement (third claim for relief) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted and that claim is dismissed in its entirety with prejudice.[20]

### 4.   Due Process Claim

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S. Ct. 893, 47

---

[20] Moreover, Section IX of the *Perez-Olano* Settlement Agreement requires prompt exhaustion of the administrative procedures provided therein before judicial review may be sought; and that judicial review be sought in the United States District Court for the Central District of California. *Perez-Olano*, 2010 WL 9594539, § IX.

L. Ed. 2d 18 (1976). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* (quotations and citation omitted). "To succeed on a procedural due process claim, a plaintiff must first identify a property [or liberty] right, second show that the [defendant] has deprived him or her of that right, and third show that the deprivation was effected without due process." *Progressive Credit Union v. City of New York*, 889 F.3d 40, 51 (2d Cir. 2018) (quotations, alterations and citations omitted); *see also Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017) (holding that a procedural due process claim requires the plaintiff to demonstrate "(1) that Defendants deprived him of a cognizable interest in 'life, liberty, or property,' (2) without affording him constitutionally sufficient process.")

In his complaint, plaintiff conclusorily alleges that "[d]efendants have violated the Fifth Amendment's guarantee of due process of law by failing to grant [his] I-360 [Petitions]," (Compl., ¶ 57), without specifying how defendants' failure to grant his I-360 Petitions deprived him of any liberty or property interest without constitutionally sufficient process.[21]  However, plaintiff's complaint and the administrative record indicate, *inter alia*, that plaintiff: (i) was sent an NOID providing him with an opportunity to submit missing evidence pertaining to his eligibility for SIJ classification prior to the denial of his First I-360 Petition; (ii) was provided

---

[21]  In opposition to defendants' motion, plaintiff also conclusorily contends: (i) that "[t]he federal government is obligated to give immigrant children fundamentally fair proceedings. It failed to live up to this requirement in this matter[,]" (Plf. Mem. at 5); and (ii) that he "has been deprived of rights guaranteed to him by statute because of the Defendants' unlawful conduct, and therefore his right to due process of law has been violated." (*Id.* at 12). However, plaintiff does not specify in what way the proceedings were fundamentally unfair to him or of what statutory rights he was allegedly deprived by defendants' conduct. To the extent plaintiff contends that "[i]t was unfair that in his particular case he did not receive [an RFE], while applicants for all other types of applications do[,]" (Plf. Mem. at 8), that contention is without merit. As set forth above, defendants, in fact, sent plaintiff an NOID in compliance with the applicable regulation, 8 C.F.R. § 103.2(b)(8). (AR 14-16).

notice of the decisions on both of his I-360 Petitions, the reasons for the denials thereof, and his right to appeal in accordance with 8 C.F.R. § 240.11(e); (iii) appealed the January and February Decisions and received timely notice of the AAO's decisions and the reasons therefor; and (iv) moved to reopen and reconsider the AAO's Decisions, and received timely notice of the decisions on those motions and the reasons therefor. Since plaintiff, *inter alia*, does not allege that he was denied adequate notice or a meaningful opportunity to be heard, or otherwise identify what other process was constitutionally due him, the complaint fails to state a plausible procedural due process claim. *See, e.g. Dorley v. Cardinale*, 119 F. Supp. 3d 345, 356 (E.D. Pa. 2015) ("Aliens do not . . . have a statutorily-protected interest in the approval of an immigration petition left to the discretion of the USCIS. . . . [The plaintiff] does have a statutory right to have his self-petition reviewed and decided in accordance with the APA[,] . . . [and] the Court has already determined that the AAO's decision was proper under the APA. . . . Therefore, [the plaintiff's] procedural due process claim is also dismissed."); *see also Eid v. Thompson*, No. 2:11-cv-03945, 2012 WL 12862848, at * 5 (D. N.J. Sept. 24, 2012), *aff'd*, 740 F.3d 118 (3d Cir. 2014) ("An alien does not have a liberty interest upon application or approval of a visa petition at the discretion of the agency. . . . Even if [the plaintiffs] had protected interests, they received notice and an opportunity to be heard at a meaningful time and in a meaningful manner. . . . The BIA even remanded their application to ensure that Plaintiffs were given an opportunity to respond to a NOID. Thus, Plaintiffs failed to state a procedural due process claim." (quotations and citation omitted)).

Although there is a "general substantive due process right of all people to be free of government action that is arbitrary, conscience-shocking, or oppressive in a constitutional

sense[,]" *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 275 (2d Cir. 2011) (quotations and citation omitted); *accord Cunney v. Bd. of Tr. of Village of Grand View, N.Y.*, 660 F.3d 612, 626 (2d Cir. 2011), "[o]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense and therefore unconstitutional." *Cox*, 654 F.3d at 275 (quotations and citation omitted); *see also Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999) ("Substantive due process is an outer limit on the legitimacy of governmental action. . . Substantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority.") "It is not enough that the government act be incorrect or ill-advised; it must be conscience-shocking." *Cox*, 654 F.3d at 275 (quotations and citation omitted). Plaintiff does not allege any such arbitrary or outrageous conduct on the part of defendants.

Moreover, since, *inter alia*, "[a]n alien does not have a 'liberty interest' in the favorable adjudication of an immigration petition[,]" *Dorley*, 119 F. Supp. 3d at 355 (quotations and citation omitted), *accord Iredia v. Fitzgerald*, No. 10-cv-228, 2010 WL 2994215, at * 5 (E.D. Pa. July 27, 2010); *cf. Wanyama v. Holder*, 698 F.3d 1032, 1037 (8th Cir. 2012) ("[A]liens do not have a constitutionally protected liberty or property interest in receiving asylum, because it is statutorily created relief that is subject to the unfettered discretion of a governmental authority" (quotations and citation omitted)), plaintiff cannot state a plausible substantive due process claim. Accordingly, the branch of defendants' motion seeking to dismiss plaintiff's Fifth Amendment due process claim (fourth claim for relief) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted and that claim is dismissed in its entirety with prejudice.

IV.     Conclusion

For the reasons set forth above, the branch of defendants' motion seeking to dismiss plaintiff's mandamus claims and claims to compel agency action pursuant to 5 U.S.C. § 706(1) pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure is granted and those claims are dismissed in their entirety for lack of subject matter jurisdiction; and the branches of defendants' motion seeking to dismiss plaintiff's remaining claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure are granted and plaintiff's remaining claims are dismissed in their entirety with prejudice. The Clerk of the Court shall enter judgment in accordance with this Order and close this case.

SO ORDERED.

_____/s/_____
Sandra J. Feuerstein
United States District Judge

Dated: January 31, 2019
       Central Islip, New York